**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| DORIS L. THOMAS, | ) | 3:13-cv-00460-HDM-VPC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF U.S. MAGISTRATE JUDGE** |
| CAROLYN COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | May 13, 2014 |
| _____ | ) | |

This Report and Recommendation is made to the Honorable Howard D. McKibben, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is plaintiff's motion for remand and/or reversal (#15).[1]  Defendant filed a cross-motion to affirm (#17).  For the reasons set forth below, the court recommends that plaintiff's motion for remand and/or reversal be denied, and defendant's cross-motion to affirm be granted.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Doris Lizette Taylor ("plaintiff") was a forty-nine-year-old woman with at least a high school education on the alleged disability date of March 15, 2009 (Administrative Record ("AR") 38, 47).  On August 24, 2009, she filed an application for disability insurance benefits under Title II.  *Id*. at 38.  Defendant Commissioner denied plaintiff's application initially and on reconsideration.  *Id*.

_____

[1] Refers to the court's docket number.

On October 19, 2011, plaintiff and her attorney appeared at a hearing before Administrative Law Judge ("ALJ") Eileen Burlison. *Id.* at 55-81. The ALJ followed the five-step sequential process for evaluating disability claims, set forth in 20 C.F.R. § 404.1520, and issued a written decision on April 19, 2012, finding plaintiff had "not been disabled" pursuant to the Social Security Act at any time from the alleged onset date through the date of the ALJ's decision. *Id.* at 38-49. Plaintiff appealed, and the Appeals Council denied review. *Id.* at 1-28. Thus, the ALJ's decision became the final decision of the Commissioner.

On August 27, 2013, having exhausted all administrative remedies, plaintiff, through counsel, filed a complaint for judicial review (#1-1). Plaintiff argues that the ALJ's decision was based on legal error, in that her determination of plaintiff's Residual Functional Capacity ("RFC") and her credibility findings were not supported by substantial evidence in the record (#15, pp. 7-18). Accordingly, plaintiff asks the court to reverse or remand the ALJ's decision. *Id.* at 1.

## II.  STANDARD OF REVIEW

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks and citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Orteza v. Shalala*, 50 F. 3d 748, 749 (9th Cir. 1995) (citation omitted). "However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Id*. at 749 (citation omitted). The ALJ alone is responsible for determining credibility and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

The initial burden of proof rests upon the claimant to establish disability. 20 C.F.R. § 404.1512(a); *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986) (citations omitted). To meet this burden, a plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months . . . " 42 U.S.C. § 423 (d)(1)(A).

## III.  DISCUSSION

### A. Five-Step Sequential Process

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. § 404.1520; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If at any step the Social Security Administration (SSA) can make a finding of disability or nondisability, a determination will be made and the SSA will not further review the claim. 20 C.F.R. § 404.1520(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.1520(a)(4)(i), (b); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combinations of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. Basic work activities are "the abilities and aptitudes necessary to do most jobs[,]" which include: "(1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1521. If a claimant's impairment is so slight that it causes no more than minimal functional limitations, the Commissioner will find that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii), (c). If, however, the Commissioner finds that the claimant's impairment is severe, the Commissioner proceeds to step three. *Id*.

In the third step, the Commissioner determines whether the impairment is equivalent to one of a number of specific impairments listed in 20 C.F.R. pt. 404, subpt. P, app.1 ("Listed Impairments"). 20 C.F.R. § 404.1520(a)(4)(iii), (d). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education, or work experience. 20 C.F.R. § 404.1525(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last fifteen (15) years, which lasted long enough for him or her to learn to do it, and

was substantial gainful activity.  20 C.F.R. § 404.1565(a).  The ALJ reviews the claimant's "residual functional capacity" ("RFC") and the physical and mental demands of the work previously performed.  *See id.*; *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010).  RFC is what the claimant can still do despite his or her limitations.  20 C.F.R. § 404.1545.  In determining RFC, an ALJ must assess all evidence, including the claimant's and others' descriptions of limitation, and medical reports, to determine what capacity the claimant has for work despite the impairments.  *See* 20 C.F.R. § 404.1545(a).

At step four, the ALJ may consider any of the claimant's daily activities that "may be seen as inconsistent with the presence of a condition which would preclude all work activity."  *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (upholding denial of disability benefits where claimant could "take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries"); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (upholding denial of benefits based in part on determination that claimant performed daily activities that were transferrable to a work setting); compare *Orn v.  Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (concluding activities not transferrable to work setting); *Reddick v.  Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (claimant should not be "penalized for attempting to lead [a] normal [life] in the face of [her] limitations"); *Fair v.  Bowen*, 885 F.2d 597, 603 (9th Cir. 2007) (noting that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication").

A claimant can return to previous work if he or she can perform the "actual functional demands and job duties of a particular past relevant job" or "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy."  *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation and citation omitted).

If the claimant can still do past relevant work, then he or she is not disabled for purposes of the Act. 20 C.F.R. § 404.1520(f); *see also Berry*, 662 F.3d at 131 ("Generally, a claimant who is physically and mentally capable of performing past relevant work is not disabled, whether or not he could actually obtain employment.").

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish, in step five, that the claimant can perform work available in the national economy. 20 C.F.R. § 404.1520(e), (f); *see also Yuckert*, 482 U.S. at 141-142, 144. If the claimant cannot do the work he or she did in the past, the Commissioner must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The ALJ may meet this burden either through the testimony of a vocational expert or by reference to the Grids. *Tackett v. Apfel*, 180 F. 3d 1094, 1100 (9th Cir. 1999).

"The [G]rids are matrices of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth in rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (internal quotation and citation omitted). The Grids place jobs into categories by their physical-exertional requirements, and there are three separate tables, one for each category: sedentary work, light work, and medium work. 20 C.F.R. Part 404, Subpart P, Appx. 2, § 200.00. The Grids take administrative notice of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels. *Id*. Each grid has various combinations of factors relevant to a claimant's ability to find work, including the claimant's age, education and work experience. *Id*. For each combination of factors, the Grids

direct a finding of disabled or not disabled based on the number of jobs in the national economy in that category.  *Id*.

The ALJ may not rely solely on the Grids unless they accurately and completely describe the claimant's abilities and limitations.  *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985) (citation omitted).  The ALJ must take the testimony of a vocational expert where the claimant suffers from non-exertional limitations that are "sufficiently severe so as to significantly limit the range of work permitted by his exertional limitation."  *Hoopai*, 499 F.3d at 1076 (internal quotation and citation omitted).  Further, where the ALJ finds that a nonexertional limitation alone is severe [at step two of the sequential process] (absent any exertional limitation), the ALJ is not required to seek the assistance of a vocational expert at step five unless the nonexertional limitation(s) are "significant, sufficiently severe, and not accounted for in the grid[s]."  *See id*. at 1076.

If, at step five, the ALJ establishes that the claimant can do other work which exists in the national economy, then he or she is not disabled.  20 C.F.R. § 404.1566.  Conversely, if the ALJ determines the claimant unable to adjust to any other work, the claimant will be found disabled.  20 C.F.R. § 404.1520(g); *see also Lockwood*, 616 F.3d at 1071; *Valentine v. Comm'r of Soc. Sec. Admin*., 574 F.3d 685, 689 (9th Cir. 2009).  However, "[a] finding of 'disabled' under the five-step inquiry does not automatically qualify a claimant for disability benefits."  *Bustamante*, 262 F.3d at 954.

**B.  ALJ's Findings**

The ALJ found that plaintiff suffers from the severe impairments of migraines, depression, and myofascial pain syndrome secondary to chronic neck and back pain (AR 40).  The ALJ determined that plaintiff has past relevant work as a loan originator, which is considered a sedentary, skilled position with a specific vocational preparation ("SVP") of 7.  *Id*. at 47.  The ALJ also found

that plaintiff retains the RFC to perform light, uncomplicated work of a semi-skilled nature, but with several exertional limitations.  *Id.* at 42.

The ALJ considered plaintiff's age, education, work experience and RFC, and found that plaintiff can perform jobs that exist in significant numbers in the national economy.  *Id.* at 48. Accordingly, the ALJ determined that plaintiff "has not been under a disability," as defined in the Social Security Act.  *Id.*  Specifically, the ALJ made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2.  The claimant has not engaged in substantial gainful activity since March 15, 2009, the alleged onset date (20 C.F.R. § 404.1571).

3.  The claimant has the following severe impairments:  migraines, depression, and myofascial pain syndrome secondary to chronic neck and back pain (20 C.F.R. § 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, (20 C.F.R. §§§ 404.1520(d), 404.1525, 404.1526).

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except that she may not climb; may only occasionally balance, stoop, kneel, crouch and/or crawl; and must avoid working at heights or operating dangerous moving machinery.  She is further limited to uncomplicated work of a semi-skilled nature.

6.  The claimant is unable to perform any past relevant work (20 C.F.R. § 404.1565).

7.  The claimant was born on July 28, 1959 and 49 years old, which is defined as an individual closely approaching advanced age, on the amended disability onset date (20 C.F.R. § 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 404.1564).

9.  The claimant has acquired work skills from past relevant work (20 C.F.R. § 404.1568).

10. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 C.F.R. §§§ 404.1569, 404.1569(a), 404.1568(d)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 15, 2009, through the date of this decision (20 C.F.R. § 404.1520(g)).

*Id.* at 40-48.

**C. RFC Assessment**

Plaintiff first challenges the ALJ's RFC finding and contends that the ALJ's decision was based on legal error because her RFC finding was not supported by substantial evidence in the record (#15, p. 6). Specifically, plaintiff asserts that the ALJ failed to accord proper weight to the opinion of plaintiff's treating physician. *Id.* at 7-11. Defendant responds that the ALJ discussed the treating physician's opinion in detail and offered good reasons to reject it, all of which were supported by the record and by the law (#17, p. 6).

Generally, an ALJ should give more weight to the opinion of a treating source than to the opinion of non-treating doctors. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). "At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons. *Lester*, 81 F.3d at 830 (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." *Lester*, 81 F.3d at 830 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

However, "[i]t is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). The ALJ must also consider the opinions of state agency consultative examiners. *See Orn v. Astrue*,

495 F.3d 625, 632 (9th Cir. 2007). When the opinions of treating and examining doctors conflict, it

is the ALJ's duty to resolve the conflicts. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

"[W]hen an examining physician provides 'independent clinical findings that differ from the

findings of the treating physician,' such findings are 'substantial evidence.'" *Orn v. Astrue*, 495

F.3d 625, 632 (9th Cir. 2007); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (an

examining physician's opinion "alone constitutes substantial evidence, because it rests on [the

doctor's] own independent examination of [the claimant").

Further, the ALJ must also consider the findings of fact and opinions of non-examining state

agency medical and psychological consultants and other program physicians and psychologists, who

are experts in Social Security disability programs. Social Security Ruling ("SSR") 96-6p, 1996 WL

374186. Such consultants are "highly qualified physicians and psychologists who are experts in the

evaluation of the medical issues in disability claims under the Act . . . . they consider the medical

evidence in disability cases and make findings of fact on medical issues, including, but not limited

to, the existence and severity of an individual's impairment." *Id*. The ALJ may rely on opinions

from state agency reviewers if those opinions are well-supported and consistent with the record as a

whole. *Id*. "[O]pinions from State agency medical and psychological consultants and other program

physicians and psychologists may be entitled to greater weight than the opinions of treating or

examining sources." *Id*.

Here, the ALJ indicated that medical records reflect that plaintiff was diagnosed with chronic

neck and low back pain for which she has been undergoing treatment since at least 2007 (AR 40).

Treatment notes reflect that she was able to maintain a high functional level with injections and

medications and worked full-time through most of 2008 with this condition. *Id*. at 41; 59; 236-243.

However, she sustained multiple compression fractures of the spine in a March 2009 ATV crash. *Id*.

at 374.  Plaintiff then had two vertebroplasty procedures, trigger point and steroid injections, nerve blocks and physical therapy.  *Id*. at 388; 483-497.  She has also been diagnosed with major depression, recurrent and mild with treatment.  *Id*. at 524-26.  Based on these records, the ALJ found that plaintiff had the severe impairments of migraines, depression and myofascial pain syndrome secondary to chronic neck and back pain.  *Id*. at 40.

The ALJ considered the opinion of treating physician Abdollah Assad, M.D.  *Id*. at 45-46. Dr. Assad filled out a mental medical source statement form and indicated that plaintiff is delusional/paranoid and suffers from anxiety, racing thoughts and mood swings.  *Id*. at 549-554.  He listed the following findings:  plaintiff is depressed, has migraines, severe pain from injuries from the accident and poor social support.  On a chart entitled Mental Abilities and Aptitudes Needed to Do Unskilled Work, under "complete a normal workday and workweek without interruptions from psychologically based symptoms," Dr. Assad checked "no useful ability to function."  *Id*. at 551. He also indicated on the questionnaire that he anticipated that plaintiff's impairments or treatments would cause her to be absent from work about three days per month.  *Id*. at 553.  He opined that plaintiff would be unable to meet competitive standards of understanding, remembering, and carrying out detailed instructions, or dealing with the stress of semiskilled or skilled work, and that she would be more than limitedly impaired in performing at a consistent pace without an unreasonably number and length of rest periods, accepting instructions and responding appropriately to criticism from supervisors, and dealing with normal work stress.  *Id*. at 551-554.  He references plaintiff's memory loss as a basis for these conclusions.  *Id*. at 552.

The ALJ, however, discredited many of Dr. Assad's conclusions as set forth on the form discussed above, because they contradicted other statements on the same questionnaire as well as his treatment notes.  *Id*. at 45-46.  For example, on the questionnaire Dr. Assad also assessed that

plaintiff would be capable of satisfactorily maintaining regular work attendance, remembering work-like procedures, understanding, remembering and carrying out very short and simple instructions, sustaining an ordinary work routine without supervision, working in coordination with or proximity to co-workers, asking questions and requesting assistance, and remaining aware of normal hazards and taking appropriate precautions.  *Id*. at 551.  Dr. Assad saw plaintiff monthly, but the notes from the majority of the visits reflect that plaintiff's mood was euthymic; only in seven of twenty-two visits did the doctor note any depressed mood.  *Id*. at 626-644.  Additionally, treatment notes from Nurse Kiehn and Dr. Berman repeatedly documented a normal mood and affect and the absence of any symptoms of depression, anxiety, or inability to concentrate.  *Id*. at 648-698.  Treatment notes from Northern Nevada Adult Mental Health Services indicate plaintiff showed interest and enthusiasm for group exercises, and that in individual sessions, she appeared alert and oriented with linear logical thought process and displayed judgment, insight and impulse control "sufficient to meet her basic needs."  *Id*. at 620-622.  No objective medical evidence in the record suggests memory loss; in fact, the evidence indicates that plaintiff's memory is "grossly intact."  *Id*. at 46, 524-27.

The ALJ also considered the report of consultative examiner Richard W. Lewis, Ph.D.  *Id*. at 524-27.  Dr. Lewis concluded that plaintiff is able to "understand, remember and carry out simple one and two step and detailed levels of instructions.  Her concentration, attention and short term recall functions are sufficient to support these ratings."  *Id*. at 526.  He based his opinion on plaintiff's fast and accurate completion of serial 7's, serial 3's, and alphanumerical counting abilities, her successful completion of delayed recall and proverb and comprehension testing.  He assessed "She is not seriously mentally ill nor behaviorally disturbed and can interact appropriately with supervisors, co-workers and the general public."  *Id*.  He based this opinion on her cooperation

in the evaluation process, her ability to cope well with real world stressors, and her appropriate friendliness during the examination.  *Id*. at 525.  The ALJ accorded great weight to Dr. Lewis's opinion and found it consistent with her determination that plaintiff can perform uncomplicated, semi-skilled work.  *Id*. at 46.

The ALJ gave little weight to two state agency psychological consultants who reviewed the record and concluded that plaintiff had no restrictions of daily living and no difficulties maintaining social functioning, concentration, persistence or pace.  She discounted these opinions because she determined that the record as a whole demonstrates mild to moderate difficulties.  *Id*. at 47.  The ALJ accorded significant weight to the assessment of state agency consultant Mayenne Karelitz, M.D., who reviewed the medical records relating to plaintiff's back issues, headaches and myofascial pain.  *Id*.  Dr. Karelitz considered plaintiff's documented spinal compression fractures, kyphoplasties (a procedure used to treat such fractures), her use of narcotic pain medications, trigger point injections and epidural shots for myofascial pain, and complaints of increased neck pain and headaches with a normal brain MRI and EEG.  *Id*. at 516-523.  The consultant also took into account plaintiff's subjective complaints.  Dr. Karelitz opined that the plaintiff would be able to perform light work avoiding concentrated exposure to hazards, with only occasional balancing, stooping, kneeling, crouching and crawling.  *Id*.  The ALJ found these conclusions consistent with the record as a whole, except that they did not take into account plaintiff's dizziness.  *Id*. at 47.  Thus, the ALJ further restricted plaintiff to no climbing.  *Id*.

The ALJ concluded that plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except that she may not climb; may only occasionally balance, stoop, kneel, crouch and/or crawl; and must avoid working at heights or operating dangerous moving machinery.  She is further limited to uncomplicated work of a semi-skilled nature.  *Id*. at 42.

Plaintiff bears the burden of proving disability.  *See* 20 C.F.R. §§ 404.1512(a), 416.912(a). Notably, two consultative examiners found that plaintiff had *no* functional limitations.  However, the ALJ accorded the most weight to the reports of consultative psychological examiner Dr. Lewis and state agency physician Dr. Karelitz.   The ALJ concluded that these two reports—which both assessed mild to moderate functional limitations—were consistent with the medical records as a whole.  Plaintiff argues that the ALJ did not properly weigh the opinion of her treating physician. However, the ALJ set forth an appropriate basis for according less weight to Dr. Assad's opinions as set forth on the questionnaire because Dr. Assad's statements on the largely check-the-box form were conclusory and because his own treatment notes contradicted the conclusion that plaintiff's impairments were severe enough to prevent her from working.  *Id*. at 32.  *See Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004) (treating physicians' views carried only minimal evidentiary weight because they were in the form of a checklist, did not have supportive objective evidence and were inconsistent with other evidence).  An ALJ may permissibly reject a treating physician's opinion when that opinion is inconsistent with the physician's own treatment notes and when the opinion is not supported by clinical findings.  *See* 20 C.F.R. §§ 404.1527(c)(3) & (c)(4); *Bray v. Comm'r*, 554 F.3d 1219, 1228 (9th Cir. 2009).  The medical records provide no objective findings to support Dr. Assad's conclusions on the form that plaintiff is severely limited.  Accordingly, the court finds that substantial evidence supports the RFC determination.

**D.  Credibility Determination**

Plaintiff also argues that the ALJ's findings as to her credibility were not supported by substantial evidence in the record and that she failed to articulate clear and convincing reasons for not fully crediting plaintiff's pain and limitation testimony (#15, pp. 14-17).

The ALJ is responsible for determining credibility and resolving conflicts in medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ must evaluate the credibility of a claimant's subjective testimony in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged" (*id.* at 1036; 42 U.S.C. § 423(d)(5)(A) ("an individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability")). If the claimant meets the first test and there is no evidence of malingering, the ALJ may only reject the claimant's testimony about the severity of the symptoms if he or she gives 'specific, clear and convincing reasons' for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Lingenfelter*, 504 F.3d at 1036). "These findings, properly supported by the record, must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc).

"Factors that the adjudicator may consider when making such credibility determinations include the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). While medical opinions are not controlling in assessing credibility, they are nonetheless probative evidence for the ALJ to consider. 20 C.F.R. §§ 404.1529(c), 416.929(a)(2012); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). "[L]ack of medical evidence . . . is a factor that the ALJ can consider in his credibility analysis." *Burch*, 400 F.3d at 681. However, "[t]he fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it." *Vertigan v.*

*Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).   The causal relationship between the objective evidence of a medical impairment and the claimant's complaints need only be a "reasonable inference," not a "medically proven phenomenon." *See Smolen*, 80 F.3d at 1282.

In this case, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that plaintiff's statements that she is unable to work due to her mental and physical conditions and limitations are not credible to the extent they are inconsistent with the ALJ's RFC determination (AR 43).   Plaintiff reports that she has constant pain, muscle spasms, and reduced range of motion.  *Id*. at 197.   She testified at the hearing that she wakes up in the morning and gets her son off to school, and then she does some light housework, with rest periods as needed.  *Id*. at 60-61.   She drives to the grocery store if it is only for a few things or for prescriptions; if she needs to do more she takes her son with her.   She takes pain medication daily.   She watches television, knits for short periods, attends her son's violin concerts at school.   She can walk "pretty good," can sit or stand each for no longer than thirty minutes, can walk for a bit longer than that.  *Id*. at 65-66.   Plaintiff testified that pain from her chin to her hips prevents her from working.  *Id*. at 66.   She stated that she takes medication for depression but that it does not work very well.  *Id*. at 71.

The ALJ concluded that while plaintiff's type and frequency of treatment and prescribed medications are consistent with her claim of pain, the record contains substantial evidence that her conditions are not as limiting as she alleges.  *Id*. at 43.   The ALJ states that the record supports a significant back injury.   The ALJ also found that plaintiff underwent several procedures and a number of regular trigger point and steroid reductions to reduce her myofascial pain throughout 2009-2011 and that almost every treatment note indicates that she reported significant relief.

Plaintiff claims that she has reduced range of motion.  However, treating physician Dr. Berman's clinical observations show a full range of motion in her back, normal strength, and no evidence of muscle wasting.  *Id*. at 44, 393-94.  No treating or examining physicians indicated that plaintiff has any physical limitations at all.  *Id*. at 45, 283, 286, 393-94.  The ALJ also noted that a Social Security field office employee documented observations that plaintiff had no difficulty hearing, reading, breathing, understanding, concentrating, talking, answering, sitting, standing, walking, seeing, using her hands, or writing and was coherent during the in-person interview in September 2009.  *Id*. at 45, 174.

With respect to plaintiff's migraines, she states that they occur bi-monthly and are triggered by medications and stress.  *Id*. at 197.  She states that most days she does not get out of bed either as a result of migraines or depression.  *Id*. at 217.  She also stated that she is able to help two of her children with homework, feed and clothe them, shower, dress, and get a few things done around the house.  *Id*.  Plaintiff told consultative examiner Dr. Lewis that during a typical day, "[S]he works around the house and gets on the computer looking for work.  If it is hot she goes to the pool to put her feet in the water.  She goes to appointments and spends time with family."  *Id*. at 44, 525.  She also reported going grocery shopping and participating in preparing dinner.  *Id*.  She reported no marked increase in migraines two months after the March 2009 ATV accident and that her headaches improved with medication.  *Id*. at 44-45, 382.  With respect to depression, as discussed above in relation to the ALJ's RFC findings, plaintiff claims debilitating depression; however, the medical records and reports of treating and examining physicians contain no references to any inability to perform activities of daily living or work activities.  *Id*. at 45, 524-527, 620-22, 648-98.

Plaintiff also testified that she has poor concentration; she stated that after discussing or staying on a topic for about thirty to forty-five minutes she would "probably get side tracked and

start talking about something else." *Id*. at 71.  Plaintiff's son testified about her alleged memory problems.  He stated that since the accident his mother's memory has not been very good:  "she'll ask me a question and I'll answer and she'll ask the same question like a minute later." *Id*. at 74.  He said that his mother will completely forget she did something.  When asked for an example, he stated that once she drank his Powerade and apologized, and then the next day she denied that she drank it. *Id*. at 75.  He was unable to think of other examples. *Id*.  Treating physician Dr. Berman noted in September 2009 that plaintiff was "alert, oriented, and answering questions appropriately . . . . Neurological examination is intact." *Id*. at 385.  Treating nurse practitioner Bayless noted in November 2009 that plaintiff was "alert and oriented" and working part-time. *Id*. at 449.  Dr. Lewis performed several psychological tests and noted that plaintiff's memory recall was "accurate and very fast" and that she recalled all three words after ten minutes. *Id*. at 526.  Dr. Lewis concluded that plaintiff had "concentration, attention and short term recall functions" sufficient to carry out detailed instructions. *Id*.

The court concludes that the ALJ's credibility determination is supported by the record and that she did not arbitrarily discredit plaintiff's subjective testimony. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citing *Bunnell*, 947 F.2d at 345-46) (lack of objective evidence to support a claimant's description of her pain and limitations is a valid reason to discount her testimony); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (testimony's inconsistency with the medical record is a valid reason for rejecting the testimony).  "If the ALJ's finding is supported by substantial evidence, the court 'may not engage in second-guessing.'" *Tommasetti, v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).  The ALJ properly weighed that plaintiff's subjective pain and limitation complaints were not supported by the medical record and that plaintiff's own statements and testimony about her limitations and daily activities were often contradictory.  Plaintiff argues

that her daily activities should not have undermined her credibility because they "were interspersed with rest periods." (#15, p. 15). However, a plaintiff's ability—even a qualified ability—to perform a range of daily activities may be a valid basis to discount her credibility. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2010) ("Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."). The ALJ found that plaintiff's son was not a reliable witness. While he testified that his mother could not remember the answer to a question for longer than one minute, there is no objective medical evidence of memory loss throughout the record (AR 44).

Finally, the ALJ properly considered that plaintiff's physical and mental impairments were adequately controlled through medication, finding that plaintiff had reported "dramatic benefit" and that her overall pain is improved by relaxation and medications. *Id*. at 40-41, 43-45; s*ee Warre v. Commissioner of Social Sec. Admin.*, 439 F.3d 1001, 1008 (9th Cir. 2006); 20 C.F.R. § 404.1529(c)(3)(iv)-(v). The court recognizes that the ALJ's credibility determination is entitled to deference if it is supported by substantial evidence in the record, and the court finds that the ALJ properly supported and adequately explained her partially adverse credibility determination with specific, clear, and convincing reasons. Accordingly, remand or reversal is not warranted.

## IV. CONCLUSION

Based on the foregoing, the court concludes that substantial evidence in the record supported the ALJ's RFC determination. Regarding plaintiff's credibility, the ALJ gave specific, clear and convincing reasons for partially discounting plaintiff's subjective symptom and limitations testimony, and this decision also was supported by substantial evidence in the record. The court

therefore recommends that plaintiff's motion for remand and/or reversal (#15) be denied and that defendant's cross-motion to affirm (#17) be granted.

1.     Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2,  the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.     This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.   RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for remand and/or reversal (#15) be **DENIED** and defendant's cross-motion to affirm (#17) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** accordingly and close this case.

**DATED:**  May 13, 2014.

_____
**UNITED STATES MAGISTRATE JUDGE**